IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MILDRED QUINONES, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 08-439-JJF |
| | : |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social | : |
| Security, | : |
| | : |
| Defendant. | : |
| | : |
| | : |

David F. Chermol, Esquire of CHERMOL & FISHMAN, LLC,
Philadelphia, Pennsylvania.
Gary C. Linarducci, Esquire of LINARDUCCI & BUTLER, New Castle,
Delaware.

Attorney for Plaintiff.

David C. Weiss, Esquire, United States Attorney, and Dina White
Griffin, Esquire, Special Assistant United States Attorney, of
the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Of Counsel:  Eric P. Kressman, Esquire, Acting Regional Chief
Counsel; Taryn F. Jasner, Esquire, Assistant Regional Counsel, of
the SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.

Attorneys for Defendant.

**MEMORANDUM OPINION**

October 9, 2009
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is an appeal pursuant to 42
U.S.C. § 405(g) filed by Plaintiff, Mildred Quinones, seeking
review of the final administrative decision of the Commissioner
of the Social Security Administration (the "Administration")
denying her application for disability insurance benefits ("DIB")
under Title II of the Social Security Act (the "Act"), 42 U.S.C.
§§ 401-433.  Plaintiff has filed a Motion For Summary Judgment
(D.I. 9) requesting the Court to direct an award of benefits or
remand this matter to the Administration for further findings and
proceedings.  In response to Plaintiff's Motion, Defendant has
filed a Cross-Motion For Summary Judgment (D.I. 15) requesting
the Court to affirm the Commissioner's decision.  For the reasons
set forth below, Defendant's Cross-Motion For Summary Judgment
will be denied, and Plaintiff's Motion For Summary Judgment will
be granted.  The decision of the Commissioner dated December 26,
2007, will be reversed, and this matter will be remanded to the
Commissioner for further findings and/or proceedings consistent
with this Memorandum Opinion.

## BACKGROUND

### I.   Procedural Background

Plaintiff filed concurrent applications for DIB and
Supplemental Security Income (SSI) in July 2005, but only her DIB
application is at issue in the ALJ's decision here.  In her DIB

1

application, Plaintiff alleged disability since March 28, 2005, due to cervical and lumbar degenerative disk disease, migraine headaches, anxiety disorder and depression. (Tr. 14, 16-17). Plaintiff's application was denied initially and upon reconsideration. (Tr. 43-46). Thereafter, Plaintiff requested a hearing before an administrative law judge (the "A.L.J."). (Tr. 10). On December 26, 2007, the A.L.J. issued a decision denying Plaintiff's application for DIB. (Tr. 11-30). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. On June 28, 2008, the Appeals Council denied Plaintiff's request for review, and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying her claim for DIB. In response to the Complaint, Defendant filed an Answer (D.I. 4) and the Transcript (D.I. 6) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief in support of his Cross-Motion and Opposition to Plaintiff's Motion requesting the Court to affirm

the A.L.J.'s decision.  Plaintiff has filed a Reply Brief.
Accordingly, the Court will proceed to address the merits of
Plaintiff's claims.

## II.   Factual Background

### A.   Plaintiff's Medical History, Condition and Treatment

At the time of the A.L.J.'s decision, Plaintiff was 37 years
old and defined as a younger individual under 20 C.F.R. §
416.1563(c-d).  (Tr. 70).  Plaintiff has a seventh grade
education and past relevant work experience as a daycare
provider, certified nursing assistant, office worker, and mail
sorter.  (Tr. 563).  Plaintiff alleges disability since August
23, 2002, due to a combination of physical and mental
impairments, including cervical and lumbar degenerative disk
disease, migraine headaches, anxiety and depression.  (Tr. 14, 6-
17).  Plaintiff's detailed medical history is contained in the
record; however, the Court will provide a brief summary of the
pertinent evidence.

#### 1.   Physical Impairments

Plaintiff has a history of cervical and lumbar degenerative
disc disease.  Plaintiff first sought treatment in February 2004
from her primary care physician.  (Tr. 244).  She was referred to
Tony Cucuzzella, M.D. at the Christiana Spine Center.  X-rays in
2004 revealed mild levoscoliosis and disc space between L5-S1
that was mildly to moderately decreased in height.  An MRI in the

3

same time frame showed mild, broad-based disc protrusion and mild bilateral foraminal disc protrusion with mild to moderate neuroforaminal narrowing bilaterally. Dr. Cucuzzella diagnosed Plaintiff with L5-S1 facet arthropathy, possible L4-5 internal disc derangement and possible right sacroiliac joint inflammation. (Tr. 286-289).

Plaintiff pursued a course of medication, physical therapy and a corticosteroid injection that was somewhat helpful to her condition. (Tr. 284-286). Plaintiff's complaints of back pain continued and in February 2006, she treated with Frank Falco, M.D. at Mid-Atlantic Spine Center.

During her treatment with Dr. Falco, Plaintiff underwent an EMG/nerve conduction study which was normal (Tr. 433-436), a lumbar discogram which showed a posterior annular disruption with annular fissuring and a broad-based disc herniation (Tr. 302), and an MRI of the cervical spine which showed a small disc protrusion at C5-6 with straightening of the cervical lordosis. (Tr. 353-356). Dr. Falco performed a L4/5 percutaneous diskectomy, and Plaintiff was given a caudal epidural injection for tail bone pain. (Tr. 475, 481-482). In May, July and October 2007, Plaintiff reported that her pain was 1 out of 10 with medications. (Tr. 471, 473, 517, 520-52).

Plaintiff also has a history of migraine headaches diagnosed in 2003 by Lee Dresser, M.D. (Tr. 311-313). In 2005, Plaintiff

4

sought emergency room treatment for her headaches. (Tr. 216-233). An MRI of Plaintiff's head showed one focal area of periventricular white matter in the left occipital horn. (Tr. 307). Plaintiff's condition improved with Topamax and Fioricet. (Tr. 523, 525).

Plaintiff's medical records were reviewed by two state agency physicians, and Plaintiff underwent a consultative examination with a state agency physician. In 2005, Vinod Kataria, M.D. evaluated Plaintiff's medical records and opined that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, stand/walk and sit about 6 hours in an 8 hour workday and occasionally engage in most postural limitations. This assessment was affirmed by M.H. Borek, D.O. in January 2006. (Tr. 260).

In 2007, Yong Kim, M.D. evaluated Plaintiff and determined that Plaintiff could lift/carry 11 to 20 pounds occasionally, could sit for 30 minutes without interruption, stand for 40 minutes without interruption and walk for 30 minutes without interruption. In a total 8-hour workday, Dr. Kim opined that Plaintiff could sit, stand and walk for 5 hours and could occasionally perform postural activities and occasionally operate a motor vehicle. (Tr. 504, 507-511).

2.   Mental Impairments

Plaintiff suffers from a major depressive disorder and anxiety disorder for which she has sought treatment from Aforlarin Banjoko, M.D., David Kalkstein, M.D., and Ellie Perkins, LPC.  Plaintiff was hospitalized for a time with suicidal thoughts and a GAF of 45 on discharge, indicating serious symptoms like suicidal ideation and severe obsessional rituals or any serious impairment in social, occupational or school functioning.[1]  At subsequent visits with her psychiatrists, Plaintiff was assessed with a GAF of 51-60, indicating moderate symptoms.  Plaintiff's condition improved somewhat, but she still experienced moderate mood swings, anxiety and suicidal thoughts.  (Tr. 294-296).  Her condition was essentially unchanged throughout 2006.  (Tr. 342-351).

In April 2006, Dr. Banjoko opined that Plaintiff had a current GAF score of 51-55 indicating moderate symptoms with the highest GAF over the past year being 71-75, indicating transient symptoms, if symptoms are present.  Dr. Banjoko also opined that Plaintiff would be absent from work more than three times per month due to her symptoms.  He found that she had poor or no ability to remember work like procedures, maintain attention for two hour segments, maintain regular attendance, work in condition

---

[1]     Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

6

with or proximity to others, make simple work-related decisions, complete a work day without interruption from psychological symptoms, deal with normal work stress, understand and remember detailed instructions, carry out detailed instructions, set realistic goals, and deal with the stress of semi-skilled work and travel in unfamiliar places and use public transportation. He also found she had fair abilities in all other areas. Dr. Banjoko further opined that Plaintiff had moderate restrictions of daily living, marked difficulties maintaining social functioning and continual episodes of decompensation. (Tr. 332-336). Dr. Banjoko opined that Plaintiff's prognosis was good with treatment.

In October 2006, Plaintiff reported to Dr. Banjoko that she was abusing opiates, Klonopin and alcohol. She was diagnosed with polysubstance abuse. In March 2007, Dr. Banjoko recommended that Plaintiff attend a substance abuse rehabilitation program, or he would discharge her.

In May 2007, Plaintiff began treatment with David Kalkstein, M.D., Ph.D. Although Plaintiff discontinued treatment with Dr. Banjoko in favor of treatment with Dr. Kalkstein, Plaintiff continued to treat with her therapist, Ms. Perkins.

In July 2007, Ms. Perkins completed a mental questionnaire in which she opined that Plaintiff had a current GAF of 55. (Tr. 459-465). Ms. Perkins further opined that Plaintiff had either

7

seriously limited, poor or no useful ability in all areas of functioning, and that she suffered from moderate restrictions of daily living, marked difficulties maintaining social functioning, and extreme difficulties maintaining concentration, persistence or pace with three episodes of decompensation within a 12 month period lasting two weeks in duration.

In August 2007, Dr. Kalkstein completed a mental impairment questionnaire for Plaintiff in which he opined that Plaintiff had a current GAF of 40. Dr. Kalkstein opined that Plaintiff had a poor prognosis, no useful ability in all areas of work and mental abilities, and that she was extremely limited in all areas. (Tr. 488-493). He also opined that Plaintiff would miss more than four days of work per month due to her mental impairments. (Tr. 492).

In August 2007, Plaintiff underwent a psychiatric consultative examination with Marsha Spellman, M.D. (Tr. 494-501). Dr. Spellman noted that Plaintiff was diagnosed with major depression, bipolar disorder and anxiety. She concluded that Plaintiff has a GAF of 45-50. On examination, Plaintiff's memory was fair, she could perform simple calculations, her judgment was intact and her insight was fair. Dr. Spellman opined that Plaintiff would have moderate limitations in her ability to understand, remember and carry out simple instructions and marked limitations in other work-related areas. Dr. Spellman also

8

opined that Plaintiff may be a candidate for hospitalization.

        B.    The A.L.J.'s Decision

The A.L.J. held two hearings in this case.  Plaintiff was represented by counsel at both hearings.  At the first hearing, the A.L.J. consulted a vocational expert and asked her to consider a hypothetical person with Plaintiff's vocational profile who is limited to working at a light level of exertion with occasional posturals, should avoid concentrated exposure to extremes in cold and to machinery, and is limited to low stress, simple, unskilled work that would not be at a production pace and that would require only the occasional need to make decisions or use judgment.  The vocational expert testified that such a plaintiff could perform work as (1) a light mail clerk, with 1,200 jobs locally and 190,000 jobs nationally, (2) a cafeteria attendant, with 800 jobs locally and 120,000 jobs nationally, and (3) a security monitor with 1,200 jobs locally and 125,000 jobs nationally.  (Tr. 508-509).

At the second hearing, the A.L.J. heard testimony from a second vocational expert.  The vocational expert considered the reports of Plaintiff's treating physicians and mental health professionals, as well as the reports of the consultative examining physician and psychiatrist ordered by the A.L.J.

In her decision dated December 26, 2007, the A.L.J. found that Plaintiff suffered from cervical and lumbar degenerative

disc disease, migraine headaches, anxiety disorder and
depression, which are "severe" impairments, but which do not meet
or medically equal a listing. The A.L.J. also found that
Plaintiff's allegations regarding the intensity, persistence and
limiting effects of her symptoms were not entirely credible. The
A.L.J. found that Plaintiff had the residual functional capacity
to perform simple, unskilled light work, except that she would be
limited to occasionally performing all postural activities,
should avoid extremes of cold and machinery and could only work
at low stress jobs not requiring a production pace and which only
require the worker to make decisions or use judgment
occasionally. Based on this residual functional capacity, the
A.L.J. determined that Plaintiff could not perform her past
relevant work, but could perform a number of other jobs existing
in significant numbers in the national economy. Accordingly, the
A.L.J. concluded that Plaintiff was not under a disability within
the meaning of the Act.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security
are conclusive, if they are supported by substantial evidence.
Accordingly, judicial review of the Commissioner's decision is
limited to determining whether "substantial evidence" supports
the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185,
1190 (3d Cir. 1986). In making this determination, a reviewing

10

court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Id. In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

11

## DISCUSSION

### I.   Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is
defined as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental
impairment, which can be expected to result in death, or which
has lasted or can be expected to last, for a continuous period of
not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  To be found
disabled, an individual must have a "severe impairment" which
precludes the individual from performing previous work or any
other "substantial gainful activity which exists in the national
economy."  20 C.F.R. § 404.1505.  In order to qualify for
disability insurance benefits, the claimant must establish that
he or she was disabled prior to the date he or she was last
insured.  20 C.F.R. § 404.131, Matullo v. Bowen, 926 F.2d 240,
244 (3d Cir. 1990).  The claimant bears the initial burden of
proving disability.  20 C.F.R. § 404.1512(a); Podeworthy v.
Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations
require the A.L.J. to perform a sequential five-step analysis.
20 C.F.R. § 404.1520.  In step one, the A.L.J. must determine
whether the claimant is currently engaged in substantial gainful
activity.  In step two, the A.L.J. must determine whether the
claimant is suffering from a severe impairment.  If the claimant

fails to show that his or her impairment is severe, he or she is ineligible for benefits. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three. In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work. Id. at 428. If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five. Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. Id. The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work. Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. Id. Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national

economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. Id. In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. Id. at 428.

## II. Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By her Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence. Specifically, Plaintiff contends that the A.L.J. (1) failed to weigh the GAF scores assessed by Plaintiff's treating psychiatrist, Dr. Cohen; (2) substituted her lay judgment for the opinion of Plaintiff's treating and examining mental health professionals; (3) failed to provide the A.L.J. with a proper hypothetical that included all of Plaintiff's limitations; (4) failed to develop the record; and (5) applied definitions for the terms "marked" and "moderate" that were inconsistent with guidance from the Administration concerning the meaning of these words.

The Court has reviewed the decision of the A.L.J. in light of the record evidence and concludes that a remand of this matter is necessary to address several aspects of the decision. "An A.L.J. is not free to employ [her] own expertise against that of a physician who presents competent medical evidence," and "cannot reject evidence for no reason or for the wrong reason." Plummer

14

v. Apfel, 186 F.3d at 429. In this case, the A.L.J. rejected or only partially credited all the treating and examining source opinions in the record, including the opinions of those sources to whom Plaintiff was referred to at the request of the A.L.J., in favor of the A.L.J.'s observations during the video-conference hearing and the out-dated assessments of non-examining state agency physicians. These latter assessments fail to take into account subsequent medical and psychological developments in Plaintiff's condition. Morales v. Apfel, 225 F.3d 310, 319-320 (3d Cir. 2000). By way of example, the Court notes that the state agency physician's opinions were rendered without giving adequate consideration to the diskectomy performed on Plaintiff and the possible ramifications of that procedure on Plaintiff's physical abilities. Dr. Kim, who reviewed Plaintiff's records and conducted an independent medical evaluation of Plaintiff at the request of the A.L.J., specifically opined that Plaintiff would need to alternate positions at 30 to 40 minute intervals and could not stand/walk or sit for more than five hours total in an eight hour work day as a result of residuals from her status post percutaneous diskectomy. The A.L.J. summarily rejected this limitation stating:

> [T]here is no real basis for the need to switch
> positions according to the medical evidence of record
> other than the claimant's testimony or statements. The
> undersigned notes that the claimant sat through the
> hearing, which lasted one hour, without changing
> positions and appeared to be in no particular physical

15

discomfort.

(Tr. 24). The A.L.J.'s reliance on her personal observations to contradict the opinion of an examining physician is not permissible.[2] See Plummer, 186 F.3d at 429.

In addition, the Court is also troubled by the A.L.J.'s repeated reference in her decision to Plaintiff's possible substance abuse as a reason for rejecting or discounting the opinions of her treating psychiatrists. Defendant contends that the A.L.J. was not required to perform the two-step substance abuse analysis, because "the A.L.J. did not find drug use or alcoholism to be impairments in this case." (D.I. 16 at 24 n.2). However, it is clear to the Court that the A.L.J. found the evidence of Plaintiff's substance abuse material enough to cite it as a reason for discounting the opinions of Plaintiff's treating and examining psychiatrists and therapist.[3] For

_____

[2]     In this regard, the Court further notes, that Plaintiff's ability to sit through a hearing is entitled to little or no weight. Brown v. Astrue, 590 F. Supp. 2d 669, 676 n.1 (D. Del. 2008) (citing Ayers v. Barnhart, 2006 WL 2801949 (Sept. 29, 2006)).

[3]     Defendant contends that Plaintiff did not discount these opinions because of the possible effects of Plaintiff's alleged substance abuse, but because the opinions were contradicted and unsupported by the evidence in the record. However, as the Court noted, the A.L.J. gave no weight or only "some weight" to the opinions of treating and examining medical sources, rejecting them in favor of "stale" assessments from non-examining state agency physicians and her own personal observations at the hearing. The acceptance of non-examining source opinions over the conflicting opinions of treating physicians is improper. Brownawell v. Commissioner of Soc. Sec., 554 F.3d 352 (3d Cir. 2008) (citations omitted).

16

example, in assigning "little weight" to the opinion of Dr.
Kalkstein, the A.L.J. stated that "[t]here is no indication that
Dr. Kalkstein knew of or addressed the claimant's possible
substance abuse problem and the affects it had on her functional
ability."  (Tr. 26-27).  It is true, however, that the A.L.J.
need only analyze substance abuse separately, if the A.L.J. makes
a finding of disability in the first instance.  In this case,
however, the A.L.J.'s finding of no disability is erroneous, and
therefore, it may well be that on remand, the A.L.J. may be
required to engage in this two-step analysis should a finding of
disability ensue from a proper weighing of the medical evidence
in this case, most particularly the opinions of Plaintiff's
treating and examining sources.

    Further, the Court concludes that the A.L.J.'s hypothetical
question to the vocational expert failed to include all of
Plaintiff's limitations supported by the record.  Burns v.
Barnhart, 312 F.3d 113, 123 (3d Cir.2002); Chrupcala v. Heckler,
829 F.2d 1269, 1276 (3d Cir.1987).  By way of example, the Court
notes that even the A.L.J. concluded that Plaintiff had moderate
social limitations in her functioning, yet the A.L.J. did not
include any social restrictions in her hypothetical.  Similarly,
the A.L.J. found that Plaintiff had severe cervical degeneration
and severe migraine headaches, but did not make any allowances
for these conditions.  The A.L.J. also gave "some weight" to the

17

out-dated 2005 psychiatric assessment of Dr. Ferreira, but even
Dr. Ferreira found that Plaintiff was moderately limited in her
ability to complete a normal workday and workweek without
interruption from psychologically based symptoms. Again, the
A.L.J. made no allowance for these limitations in her
hypothetical.

In addition to the foregoing, the Court notes that there is
a legitimate need for clarification in the A.L.J.'s decision
regarding the meaning she assigned to the terms "marked" and
"moderate." In discussing some of Plaintiff's limitations, the
A.L.J. stated:

> With regard to concentration, persistence or pace,
> the claimant has moderate difficulties. Dr. Banjoko
> indicated on his assessment that the claimant's ability
> to understand, remember and carry our short, simple
> instructions, perform at a consistent pace and respond
> to changes in the work setting was seriously limited
> but not precluded. Even thought [sic] the claimant
> testified that she has trouble focusing and
> concentration [sic], she indicated that she is able to
> watch television, could do simple calculations on
> examination and was able to fix meals. All of these
> are consistent with moderate difficulties in
> concentration, persistence or pace.

(Tr. 20, emphasis added). As the Court already concluded, the
A.L.J. did not properly weigh the treating source opinions in
this case; however, to the extent she did credit Dr. Banjoko's
assessments, the above paragraph suggests a conflict. Forms used
by the Administration, define "moderate" as more than a slight
limitation, but still able to function satisfactorily. (Tr.

18

499). The term "marked" is defined as a serious limitation with a substantial loss in the ability to effectively function. (Tr. 499). In the Court's view, Dr. Banjoko's statement that Plaintiff was "seriously limited but not precluded" is more consistent with the definition of the term "marked," yet the A.L.J. apparently cited Dr. Banjoko's statement as support for her conclusion that Plaintiff suffered only "moderate" difficulties in concentration, persistence or pace. In addition to requiring complete re-evaluation of the medical source evidence as described infra, this evidence also requires re-evaluation within the correct context of the meaning of the terms "marked" and "moderate" as used by the Administration.

Lastly, the Court notes that while the A.L.J. took some measures to develop the record in this case with regard to ordering consultative examinations, she failed to take other measures with regard to the medical evidence already in the record. In discounting the opinions of Plaintiff's therapist, Ms. Perkins, the A.L.J. noted that "there are no treatment notes in the file from Ms. Perkins, other than the claimant's initial intake report . . ." (Tr. 26). The A.L.J. should have contacted Ms. Perkins to complete the record. 20 C.F.R. § 404.1512(e); SSR 85-16, 1985 WL 56855, *3.

In sum, the Court cannot conclude that the A.L.J.'s decision is supported by substantial evidence and a remand is required to

address the deficiencies in the A.L.J.'s decision. Accordingly, the Court will reverse the decision of the Commissioner, and this matter will be remanded to the Commissioner for further findings and/or proceedings consistent with this Memorandum Opinion.

## CONCLUSION

For the reasons discussed, the Court will grant Plaintiff's Motion For Summary Judgment and deny Defendant's Cross-Motion For Summary Judgment. The decision of the Commissioner dated December 26, 2007, will be reversed, and this matter will be remanded to the Commissioner for further findings and/or proceedings consistent with this Memorandum Opinion.

An appropriate Order will be entered.